REGAN, Judge.
Plaintiffs, Alice and Joseph Bonicard, instituted this suit against the defendant, Leon Lasalle, their landlord, endeavoring to recover the sum of $19,639.62, representing pain and suffering, loss of wages and medical expenses resulting from a fractured ankle incurred 'by Mrs. Bonicard, which was caused by a fall due to defective steps which serviced the premises leased from the defendant.
The defendant answered and denied that the steps were defective, and asserted that the injury occurred through the sole negligence of Mrs. Bonicard. In the alternative, the defendant pleaded contributory negligence.
From a judgment awarding Joseph Boni-card $1,342.29 for his wife’s medical expenses and loss of wages, and Alice Boni-card $4,000 for pain and suffering, the defendant has appealed. Plaintiffs have answered the appeal requesting an increase in quantum.
The record reveals that on December 26, 1954, the plaintiffs were leasing one-half of what has colloquially been designated as a shotgun double cottage from the defendant, which was located in 916 Kerlerec Street.
Shortly before 6 p. m. of that evening, Mrs. Bonicard was descending the steps which led from a porch to her rear yard in order to assist her husband in preparing an accumulation of garbage for collection. The two steps which serviced the porch were constructed of brick, surfaced with concrete. Mrs. Bonicard testified that when she placed her right foot on the edge *63 of the top step [1], the surface thereof crumbled beneath her foot causing her to fall.
Her husband testified that although he was in the yard when his wife fell, he did not actually see it occur; however, his attention was attracted when she screamed. He immediately went to her assistance, discovered she was unable to walk and lifted her to a sitting position on the bottom step. He then, with the assistance of another man, removed her to the Charity Hospital for treatment. Incidentally, he could not recall the name of this individual during the course of the trial.
Mrs. Bonicard’s ankle was fractured in several places and two of the fractures required surgical intervention. As a result thereof, Mrs. Bonicard was disabled for five months, during which time she was treated by Dr. Theodore Simon, an orthopedist.
The defendant produced two witnesses, who contradicted Mrs. Bonicard’s version of the fall. One was a neighbor, Mrs. Bucano, who resided next to the double cot-age occupied by plaintiffs and the second was a friend of Mrs. Bucano who was visiting with her at the time.
Both testified that they were in the adjacent yard when Mrs. Bonicard fell, and according to them, the injuries were caused when Joseph Bonicard struck his wife while she was standing on the back porch and knocked her down the stairs. Thereafter, they both recalled watching Mrs. Bonicard rise to her feet and walk back into her house. They asserted that they possessed a clear view of the entire altercation since the properties were only separated by a chain link fence.
On rebuttal, the plaintiff established that there was in fact a solid wood fence at least six feet tall separating the properties and the chain link fence was erected several months after the accident by Mrs. Bucano because the fire department had condemned the fence as a fire hazard and ordered it removed or replaced. All the witnesses conceded that some parts of the fence were rotten and several boards were sagging. When the defense witnesses were recalled, they changed their testimony and asserted that they had a clear view of Mrs. Boni-'card’s fall either through cracks in the wood fence or through other places therein, especially where the boards were sagging.
The trial judge completely discounted the testimony of both defense witnesses for obvious reasons. First, the record establishes that they would have to be standing next to the fence at the propitious moment and carefully peering through a crack in order to adequately witness what they laboriously claim to have seen, and second, they both insist that Mrs. Bonicard walked into her home unassisted after the fall. It taxes our credulity to be told that a woman suffering a multiple fracture of the ankle could even stand on the foot attached thereto, much less walk up stairs unassisted.
The record further reflects that acrimonious feelings existed between Mrs. Bucano and Mrs. Bonicard, which compels us to conclude that the presumption of veracity of disinterested witnesses has been overcome thereby.
Counsel for the defendant initially asserts on appeal that the trial court erred in refusing to allow the defendant to produce witnesses to testify that the board fence was rotten and that his witnesses’ view of the incident was not obstructed thereby. Counsel argues that plaintiffs’ rebuttal testimony had the effect of impeaching the defendant’s witnesses and defendant possessed the right to clarify their testimony and establish that, despite the “fence” dis-crepency, both witnesses were truthful in relating that the fall resulted from an altercation between the Bonicards.
*64 This argument has no merit. Since everyone who testified about the board fence conceded it was rotten but erect, we do not think additional testimony to establish that the fence was rotten would have added any substance to the defendant’s case. This is especially true since the testimony relative to the existence of a chain link fence was not the only untruthful fact related by the defendant’s witnesses.
Counsel for defendant secondarily asserts that the failure of plaintiffs to produce as a witness the man who assisted in removing Mrs. Bonicard to the hospital should be construed against the plaintiffs.
In view of the fact that the missing witness did not see the accident, we find no merit in this contention. We would be engaging in pure speculation were we to assume that this person may have heard the Bonicards make a statement while en route to the hospital which would contradict their testimony as to the manner in which the accident occurred. This is especially true since we have concluded that the defendant’s witnesses deliberately violated their oaths to tell the truth.
After reviewing the record, we are of the opinion that the trial court very properly accepted the plaintiffs’ version of the manner in which the accident occurred and awarded damages against the defendant, the lessor of the defective premises.
The plaintiffs have answered the appeal requesting an increase in the award of the trial court. Although the answer indicates that plaintiffs seek an increase of the award for pain and suffering from $4000 to $7500, in oral argument before us counsel conceded that his request for an increase was motivated by the fact that the defendant unduly delayed the argument of the appeal after it had been lodged in this court.
We are of the opinion that the plaintiffs have shown no adequate basis which would justify an increase in the judgment. It may be true that the inflationary trend of our economy has somewhat reduced the monetary value of plaintiffs’ judgment; however, it was also within the power of the plaintiffs, as well as the defendant, to have this matter fixed for argument before this court at an earlier date.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Photographs which were introduced in evidence reflect that the edge of the second step is chipped or broken exactly in the place where Mrs. Bonicard asserted that it “crumbled” beneath her foot.